## LYNDONVILLE NATIONAL BANK, Plaintiff in Error, v. S. M. FOLSOM, Defendant in Error.

### SYLLABUS BY THE COURT.

ANCILLARY ATTACHMENT—PRACTICE—JUDGMENT—REVIEW.—A judgment rendered upon the issues of an ancillary attachment proceeding prior to the passage of the statute, Laws of N. M., 1899, p. 170, sections 8 and, 9, cannot be reviewed by this court as an independent, final judgment.

*Error* to the District Court of Bernalillo county, Second Judicial District.   Writ of error dismissed.

ALONZO B. McMILLEN for plaintiff in error.

1. The following provisions of the statute were in force at the time of the commencement of this action:

"Creditors whose demands amount to one hundred dollars or more, may sue their debtors in the district court, by attachment, in the following cases, to wit:

\*          \*          \*          \*.          \*

"Third.   When the debtor is about to remove his property or effects out of this Territory, or has fraudulently concealed or disposed of his property or effects so as to defraud, hinder or delay his creditors."   Sec. 2686, C. L. 1897.

2. The attachment was based upon the ground that property and effects so as to hinder and delay his creditors and had fraudulently disposed of his property and effects so as to hinder and delay his creditors.

The record shows that the writ of attachment was issued on the thirty-first day of October, 1893.   The evidence introduced by plaintiff shows, among other things, the following:   Mr. L. B. Harris, who made the attachment affidavit and who was cashier of the plaintiff bank, had a

conversation with the defendant, Folsom, on the day pre-
ceding the attachment relative to the indebtedness due
from defendant to plaintiff on the note sued on.   The de-
fendant told witness that he could not pay the note or keep
up the interest.   Witness questioned defendant about his
property and especially about his interests in the Cimarron
Cattle Company and the Red River Land & Cattle Com-
pany, and the defendant denied having any interest in either
of those companies.   Witness testified that the defendant
did have one and one-third shares of stock in the Cimarron
Cattle Company at the time of the conversation, and that
the same was worth between thirty and forty thousand
dollars.

John W. Schofield, who was receiver of the Albuquer-
que National Bank, also testified that defendant was heavily
indebted to him as said receiver, and he had a conversation
with the defendant in September preceding plaintiff's attach-
ment relative to such indebtedness and particularly rela-
tive to the interest of the defendant in the Cimarron Cattle
Company.   The defendant, at that time, told the witness
that he had sold his whole interest in that property to one
Dr. South, and believing that statement to be true, witness
did not attach the stock or interest in question at the time
he brought his attachment suit.

John A. Lee also testified on behalf of the plaintiff that
at the time of the attachment he held the legal title to 218
acres of land situate near Mesilla Park, Dona Ana county,
and that the defendant was entitled to the beneficial interest
in the one-fourth of said premises.

Plaintiff also introduced the defendants deed of assign-
ment made the day following the attachment, in which the
defendant described himself as the owner of one and one-
third shares of the capital stock of the Cimarron Cattle
Company and as the owner of the undivided one-fourth of
the real estate above described standing in the name of
John A. Lee.

The evidence also shows that at all these times defend-
ant was insolvent.

Plaintiff also placed the defendant upon the stand and
offered to show by the defendant that following that attach-

ment and assignment, viz., January 6, 1894, the defendant
made a written assignment of an undivided one-third in and
to Certificate No. 18 of the Cimarron Cattle Company to the
Merchant's National Bank of St. Johnsbury, Vermont. The
court refused to permit the question to be answered for the
reason that it referred to a time subsequent to the attach-
ment.

3.   There was error in refusing to permit the defendant
to testify on behalf of plaintiff to the assignment of an
interest in the Cimarron Cattle Company to the Vermont
bank made only two months after the attachment and assign-
ment. The question called for relevant and pertinent evi-
dence. The defendant was charged with fraudulent con-
duct in disposing of and concealing his property. An at-
tempt to assign his property to an individual after a general
assignment for creditors was clearly a fraud. Such conduct
was calculated to explain and show the nature of the defend-
ant's conduct in concealing this same property prior to the
attachment. It was also the admission of the ownership of
property which he had denied owning prior to the attach-
ment and shows the attempt to carry out a plan undoubtedly
conceived at the time he attempted to deceive his creditors
as to the ownership of the property in question. Such evi-
dence was clearly admissible.

Wharton on Ev., sections 27, 33.

4.   The court erred in directing a verdict for the de-
fendant. The defendant could have had no other reason for
denying the ownership of this valuable property than to
conceal it from his creditors. Any concealment of property
by an insolvent debtor hinders and delays creditors and is,
therefore, fraudulent. The statute makes it so. Creditors
have a right to know the financial condition of their debtors.
They are justified in being alarmed when their debtor ex-
presses his inability to pay principal or interest and asserts
that he has disposed of valuable property and has no longer
an interest in it. And the statute gives a creditor a right
to have an attachment if such statements are false and
made for the purpose of concealing the debtor's property
from the creditor. It is certainly just as much a conceal-
ment to make a false statement that one does not own cer-

tain intangible property which he does, in fact, own, as it would be for a debtor to hide tangible property in his cellar or garret.   Powell v. Mathews, 10 Mo. 49, 53; Anderson v. O'Reilly, 54 Barb. (N. Y.) 620; Shilbey v. Fergusson, 29 S. W. Rep. (Ark.) 275; Mathews v. Luth, 45 Mo. App. 455; Mahner v. Lee, 70 Mo. App. 380.

5.   That the insolvent debtor permitted the legal title of real property which he owned beneficially to stand in the name of another so that it could not be seized by ordinary process, was a fraud upon creditors and warranted attachment on the ground of having disposed of his property so as to hinder and delay creditors.   Whenever a debtor places the legal title to his property in the name of another the inevitable effect is to hinder and delay creditors, and is fraudulent.   Curtis v. Settle, 7 Mo. 452.

The case last mentioned involved the construction of a statute substantially the same as our own.   The plaintiff's affidavit was, "And this affiant has good reason to believe, and does believe, that the said Thomas G. Settle is about to convey his property so as to hinder or delay his creditors." It was contended that the affidavit should have charged fraud, but the court says:

"The affidavit here is that the defendant is about to convey his property so as to hinder or delay his creditors. The words, hinder and delay, are, in my opinion, of the same import and either would have been sufficient.   But the plaintiff has not done amiss to use both.   The language is full after the manner of law writers; and it was not necessary to charge fraud in the facts alleged in the affidavit. The words imply fraud.   The law, as it protects each individual in the employment of his person and property, requires each member of society to have his property in readiness to be taken in execution whenever a judgment shall be obtained against him in a court of justice."

F. W. CLANCY for defendant in error:

1.   The ground of attachment was that defendant had fraudulently concealed and disposed of his property and effects so as to hinder and delay his creditors.   The evidence is very brief, and can be summarized in a few sentences.

Harris, who made the attachment affidavit, testified that on the evening of October 30, 1893, defendant told him that he could not pay the note or keep up the interest, and that he had no interest in the Cimarron Cattle Company or the Red River Land and Cattle Company. He was then asked what was the fact as to defendant having property in those companies at that time, and, objection being made, the court directed him to state, if he knew of his own personal knowledge, whereupon he swiftly and positively stated that defendant was the owner of one and one-third shares of stock in the Cimarron Cattle Company. On cross-examination it was plainly shown that he had no personal knowledge whatever on the subject, but relied upon information derived from an examination of books and papers and affidavits, which were not put in evidence. He does, however, testify to the fact that one share of the stock was at that time held by W. L. South as security for the payment of a promissory note. His evidence will be found in the printed record, pages 19 to 23.

Mr. Childers testified that defendant gave a deed of trust in September, 1893, to secure his indebtedness to the Albuquerque National Bank, and stated on that occasion that the security given was all the available security which he had, as all his other property was encumbered or pledged in some way. This tends to corroborate Folsom's statement that he had no interest in the cattle company, such stock as he had therein having been pledged for other debts.

Mr. John A. Lee testified that more than two years before the bank closed in Albuquerque—and the record shows by the testimony of Childers that the bank closed some time prior to September, 1893—that he had taken a deed to a tract of 218 acres of land in Dona Ana county, which was really owned by himself, Mr. Kent, Mr. M. S. Otero and Mr. Folsom in equal shares and that the deal was arranged through Mr. Kent. Plaintiff in error gravely contends that the taking of this title in this way in 1891 or earlier, long before any doubt was cast on defendant's solvency, is evidence against defendant on this attachment issue!

Mr. Schofield, who was receiver of the Albuquerque National bank, testifies that defendant told him in the latter

part of August or the early part of September, 1893, that
he had sold his interest in the Cimarron Cattle Company to
Dr. South, of Trinidad.   It will be remembered that Harris
said that South held one share of stock as collateral security,
and undoubtedly this is what Schofield refers to.

Plaintiff also introduced in evidence a general assign-
ment, made November 1, 1893, by defendant, of all of his
property for the benefit of his creditors, in which he men-
tions one and one-third shares of stock in the Cimarron Cat-
tle Company, and it is insisted that the defendant's having
voluntarily attempted to transfer for the benefit of all his
creditors whatever interest he might have in this encum-
bered stock, is evidence that he had concealed it for the
purpose of hindering and delaying his creditors.   If he had
had any such purpose he would never have voluntarily
included any mention of this stock in his general assignment.

Plaintiff also attempted to put in evidence the fact of an
assignment in January, 1894, by defendant of an undivided
one-third interest in one share of stock of the Cimarron
Cattle Company, and the court properly refused to admit
it on the ground that it was not evidence of anything which
had been done at the time of making of the attachment
affidavit.

Plaintiff in error argues that this was an admission of
the ownership of property which he had denied owning
prior to the attachment.   It is not any such admission what-
ever.   By his general assignment made on the first of
November, 1893, the defendant had parted with any title
which he had to one and one-third shares of stock in the
Cimarron Cattle Company.   It is not shown, nor was there
any offer to show, that the assignment in January, 1894,
was of the same stock or had any connection with it.

Moreover, counsel in the court below, as will appear
by reference to page 36 of the record, declared to the court
that the purpose of the evidence was to prove that defend-
ant was about to dispose of his property for the purpose of
defrauding his creditors, but this was not one of the grounds
of attachment, and plaintiff ought not now to be heard to
argue the admissibility of the testimony upon a different
ground.

The foregoing statement is quite full and complete as to the evidence, and is as strong in favor of plaintiff as it can be made. Boiled down, the contention of plaintiff in error is that defendant fraudulently concealed his property and effects so as to hinder and delay his creditors by his statement to Harris that he had no interest in the cattle companies. This statement is quite consistent with that made to Mr. Childers by defendant that all his property except that included in the deed of trust was encumbered or pledged in some way. Mr. Harris was seeking to get something on account of the note due to his bank, and defendant's answer in substance was that he had no interest in the companies available for that purpose. If his stock was pledged, he had parted with the legal title to it and did not own it.

There is nothing in the evidence to indicate any fraudulent or dishonest purpose on the part of defendant. Even if there were, the law is that if the circumstances relied on to establish a fraudulent intent are just as consistent with honesty of purpose as with dishonesty of purpose, the court is not warranted in finding that defendant acted with fraudulent intent. Strauss v. Abrahams, 32 Fed. 310.

Even if the court could believe that defendant told Harris an untruth—but there is no reason for so believing—this would not be sufficient evidence to support the attachment affidavit. This is clearly shown by an interesting Missouri case, from which the following quotation is made:

"Money, as well as other property, may be 'fraudulently concealed, removed or disposed of;' but neither concealment, removal or any other disposal of it, is discernable in a mere denial of its receipt, whether true or false, or in a failure to pay according to contract." Rohan Bros. Co. v. Latimore, 18 Mo. App. 17.

Certainly nothing in the evidence tends remotely to show that defendant had done anything with his property or effects which changed their status or condition, or which would prevent their being subjected to plaintiff's claim or to their claim of any other creditor.

2. The clerk of the court below has included what appears to be a motion for a new trial, which will be found on page 17 of the printed record. The clerk does not, however,

in any way show that this motion for a new trial was even filed in his office or that it is the motion which was heard and denied by the court. Indeed, the printed record fails to show that the clerk has ever certified anything to this court unless it may be inferred from what he says in his return to the writ of error, which return will be found on page 4 of the printed record.

This question as to whether a motion for new trial must be included in a bill of exceptions before this court will review rulings on the trial, has been quite fully argued in another case and no attempt will be made to elaborate it here. Manchester Co. v. Walker, decided in this court in 1897, but not reported; Rogers v. Richards, 8 N. M. 663; Territory v. Anderson, 4 N. M. 228; Spiegelberg v. Mink, 1 N. M. 308; Territory v. Chavez, 8 N. M. 528.

Plaintiff in error may attempt to justify the omission of the motion for a new trial from any bill of exceptions by reference to that clause of section 172 of the code of civil procedure, which provides that "all motions, orders, or decisions made or entered in the progress of the trial of any action shall become and be a part of the record for the purpose of having the cause reviewed by the supreme court," and that it shall not be necessary to have any bill of exceptions to make such matters a part of the record. The answer to this, however, is obvious. A motion for a new trial is not a motion made or entered in the progress of the trial, but is one made after the close of the trial and the rendition of a verdict; and, therefore, the statute referred to can have no application to such a motion. People v. Turner, 39 Cal. 371.

3.  Plaintiff in error has included in the record the stenographer's transcript of what took place on the trial in the court below, evidently proceeding under section 172 of the code of civil procedure, which attempts to substitute a stenographer's transcript for a bill of exceptions. The creation of a record is a judicial act and cannot be delegated to a ministerial officer like a stenographer. The record made by the clerk of the proceedings, orders, judgments and decrees of the court are properly a part of the record. They are so because by law the clerk is the officer designated to make this record and in addition to

this the record is authenticated and certified by the signature of the judge. The judicial authority vested in the members of the supreme court acting as district judges, cannot, by the Legislature, be taken away or delegated to any one else. Comm. v. Arnold, 161 Pa. St. 326 to 329.

4. The record shows that after the defendant had filed a denial of the attachment affidavit, and after the service of the writ had been quashed on motion, plaintiff took a personal judgment against defendant, leaving the issue as to the truth of the attachment affidavit undisposed of. There was nothing to prevent a trial on that issue at that time, but plaintiff chose to sue out a writ of error to review the decision on the motion to quash the service of the writ. No objection to the jurisdiction was made in this court, and this court held that the order on that motion was erroneous.

Authorities are that by taking the personal judgment, plaintiff abandoned his attachment affidavit, the issue thereon and the attachment issued thereunder. Smith v. Scott, 86 Ind. 350; Lowry v. McGee, 75 Ind. 508; Sanns v. Ross, 105 Ind. 558; U. S. Mortgage Co. v. Henderson, 111 Ind. 24; Wright v. Manns, 111 Ind. 422.

5. An inspection of the record will show that the final judgment was rendered in the court below on March 14, 1894, while the writ of error was not sued out until June 5, 1898. The appellate jurisdiction of this court is conferred by statute of the United States which reads as follows:

"Writ of error, bills of exception, and appeals shall be allowed, in all cases, from the final decisions of the district court to the supreme court of all the territories, respectively, under such regulations as may be prescribed by law; but in no case removed to the supreme court shall trial by jury be allowed in that court." U. S. Rev. Statutes, sec. 1869.

The regulations "prescribed by law" in accordance with the above section, so far as material to this proposition, will be found in the first sentence of section 5 of chapter 66 of the Session Laws of 1891, which reads as follows:

"Appeals in equity cases and writs of error in common law cases may be taken at any time within one year from the date of the rendition of final decrees or judgments, and no affidavit

shall be required as a condition precedent to the granting of such appeals or writs of error." Compiled Laws of 1897, sec. 3136.

Section 161 of the code of civil procedure makes no substantial change in the law and did not go into effect until more than three years after the final judgment in this case.

PARKER, J.—On October 31, 1893, plaintiff in error began this action in the district court of Bernalillo county against the defendant in error upon a promissory note, and a writ of attachment was issued and levied on the property of defendant. On February 12, 1894, a motion to quash the writ of attachment was heard and sustained. On March 14, 1894, judgment was had on the promissory note. Thereupon the judgment on the attachment issue was taken to this court by writ of error and was by this court reversed and the cause remanded. 7 N. M. 611. On October 4, 1897, the defendant filed a motion in the district court to strike this cause from the trial docket, because the record presented no issue for trial, which motion was overruled. On April 1, 1898, the cause was tried upon the attachment issue and at the close of plaintiff's testimony, the court, of its own motion, directed a verdict for defendant. The cause is again here to review this last mentioned judgment.

It will thus be seen that there is presented the question whether a judgment on the attachment issues, in a case where the attachment is ancillary to the main issue, is reviewable in this court independently of the judgment on the main issue. It is, of course, to be assumed, as is provided by statute and as often recognized by this court, that only final judgments are here reviewable. Whether a judgment on the attachment issues in a case of this kind is a final judgment was presented to this court in Schofield, Receiver, v. American Valley Co., 9 N. M. 485, and, after elaborate argument, it was determined that it was not and that it could not be reviewed as an independent, final, judgment. In that case the plaintiff voluntarily dismissed his action after having been defeated on the attachment issues, and this court held that, there being no final judgment in the case, there was no power in this court to review the interlocutory judgment on the

*Margin note: ANCILLARY attachment: practice: judgment: review.*

attachment issues. This must be equally true of this case. In this case, while there is a final judgment, it was rendered in March, 1894, and, more than one year having elapsed since that time before the suing out of the writ of error in this case, there is no method of bringing the same here for review, and with it the interlocutory judgment on the attachment issue. It is true that when this case was in this court the first time, the writ of error was directed to the judgment on the attachment issue and not to the final judgment, but the same was apparently unchallenged, and the same occurred at a time when this court had not adopted the doctrine announced in Schofield, Receiver, v. American Valley Co., supra. Fortunately this question, which has been a fruitful source of loss to litigants and uncertainty and annoyance to practitioners, cannot again arise, for the Legislature has made provision for a proper review of such judgments in the future. Laws of 1899, p. 170, sections 8, 9.

For the reasons stated, the writ of error will be dismissed, and it is so ordered.

Mills, C. J., and McFie, J., concur.
Leland, J., took no part in this decision.

---

[791.   August 23, 1900.]

SYLLABUS BY THE COURT.